UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION
_____

LAWRENCE PRICE #166173 and
DAVID K. LAMB #188625,

         Plaintiffs,

v.

THOMAS MACKIE et al.,

         Defendants.
_____/

Case No. 1:17-cv-996

Honorable Paul L. Maloney

## **OPINION**

This is a civil rights action brought by two state prisoners under 42 U.S.C. § 1983. Under the Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996) (PLRA), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiffs' *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiffs' allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, the Court will dismiss Plaintiffs' complaint on grounds of immunity and for failure to state a claim.

**Discussion**

I.      **Factual allegations**

Plaintiffs are presently incarcerated with the Michigan Department of Corrections (MDOC) at the Muskegon Correctional Facility (MCF) in Muskegon, Muskegon County, Michigan. The events about which they complain, however, occurred at the Oaks Correctional Facility (ECF) in Manistee, Michigan. Plaintiffs sue ECF Warden Thomas Mackie; ECF Lieutenant Unknown O'Brian; ECF Sergeant Unknown Baker; ECF Corrections Officers Unknown Benson, Unknown Lee, William Cross, Unknown Daron[1], and Unknown Gaudia; and the MDOC.

Although the events of which Plaintiff Price and Plaintiff Lamb complain occurred at different times and involved different Defendants, Plaintiffs have joined them together in this complaint because, Plaintiffs contend, their claims reflect the same pattern of misconduct.

On March 13, 2016, Plaintiff Price sent Warden Mackie a letter informing him that Mackie's ECF Corrections Officers had developed an unwritten policy and practice of "treating up" cells; placing inmates in segregation who did not eat fast enough in the chow hall, voiced complaints, or wrote grievances; and taking or destroying the property of persons placed in segregation. Despite his complaint, at 9:00 a.m. that very morning, Defendant Mackie's officers placed eight inmates, including Plaintiff Lamb, in segregation without a misconduct report, notice, or hearing. Then, Defendant Mackie's officers took all the store items of the inmates they had placed in segregation.

On May 5, 2016, Plaintiff Price's identification card was taken by Defendant Benson. When Plaintiff Price attempted to obtain a new identification card, he was told he would

---

[1] Plaintiff provides two spellings of this Defendant's name: Daron and Daran. The Court has adopted the spelling Plaintiff provided first, Daron.

have to turn in the old card. Plaintiff Price informed Defendant Benson that he needed the old card. Defendant Benson fished it out of the trash. Plaintiff Price refused to take it because it had been in the trash. Defendant Benson ordered Plaintiff Price to take it. Plaintiff Price refused. Defendant Benson referred to Plaintiff Price using a racial slur. Defendant Benson's partner, Defendant Lee, handcuffed Plaintiff Price and threatened to knock Plaintiff Price down. Defendant Benson threatened to use her taser on Plaintiff Price. Plaintiff Price was taken to segregations, placed in a locked shower cage, and strip searched.

Plaintiff Price claims that the actions of Benson and Lee were intended to humiliate, degrade, and cause mental and emotional distress. Plaintiff Price claims that the actions of Benson and Lee violated MDOC policy. Plaintiff claims Defendants Benson and Lee placed Plaintiff Price in segregation in retaliation for exercising his First Amendment right to voice a complaint.

Defendants Benson and Lee packed up Plaintiff Price's property. All of Plaintiff Price's store items were missing from his packed-up property.

After being released from segregation, Plaintiff Price wrote Defendant Mackie another complaint regarding Defendant Mackie's officers and their practice of taking property in violation of MDOC policy.

On March 14, 2016[2], at 9:00 a.m., Defendants Cross, Gaudia, and Daron handcuffed Plaintiff Lamb while he was in his cell and then took him to segregation. He was released a half-hour later. When he returned to his unit, Defendants Gaudia and Daron handcuffed Plaintiff Lamb again and returned him to segregation. Both times, Plaintiff Lamb was strip-searched.

---

[2] Although the allegations offered by Plaintiff Lamb report the events of March 14, 2016, the events are remarkably similar to those described by Plaintiff Price as occurring on March 13, 2016.

3

Once Plaintiff Lamb was placed in segregation, he was interrogated by Defendants Baker and O'Brian. They informed Plaintiff Lamb that Defendant Cross had "identified" Plaintiff Lamb, presumably as a wrongdoer of some sort. The incident did not result in a misconduct report, a notice of intent, or any administrative hearing.

While Plaintiff Lamb was in segregation, Defendant Cross and Daron packed up his property. All of Plaintiff Lamb's store items, his headphones, and his legal footlocker tray went missing. Plaintiff Lamb contends that Defendants Cross and Daron failed to comply with rules and policies when they packed up his belongings.

Plaintiff Lamb alleges that Defendants Cross and Daron damaged Plaintiff's legal foot locker. As a result, when Plaintiff Lamb was transferred to MCF, all of his legal materials were lost. Plaintiff Lamb claims he has no clue what materials were filed in his pending criminal and civil litigations.

Plaintiffs claim that the individual Defendants' failures to adhere to policy directives, operating procedures, and administrative rules amount to nonfeasance, malfeasance, and gross negligence. Plaintiffs claim also that Defendant Mackie's failure to act, train his employees, and discipline them amounts to nonfeasance, malfeasance, and gross negligence. Plaintiffs allege that Defendants' conduct violates the constitutional guarantees of due process and equal protection. Plaintiffs also argue that Defendants' gross negligence is equivalent to deliberate indifference and, thus, violates Plaintiffs' Eighth Amendment rights. Plaintiff Price's claim that the Defendants acted in retaliation for Plaintiff's complaints to the warden implicates protections under the First Amendment. Plaintiff Lamb's claim that Defendants' destruction of his legal footlocker or taking of his legal papers has interfered with his access to the courts likewise implicates Plaintiff Lamb's First Amendment rights. Plaintiffs seek compensatory and punitive

damages against the individual Defendants and declaratory and injunctive relief against the MDOC.

## II. Failure to state a claim

A complaint may be dismissed for failure to state a claim if it fails "'to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Twombly*, 550 U.S. at 555; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – that the pleader is entitled to relief." *Iqbal*, 556 U.S. at 679 (quoting FED. R. CIV. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470-71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(i)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed

5

by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994). Plaintiffs' claims allege violations of their rights to due process and equal protection (Fourteenth Amendment); their rights to seek redress of grievances and have access to the courts (First Amendment); and their right to be free of cruel and unusual punishment (Eighth Amendment).

A. Sovereign immunity

Plaintiffs may not maintain a § 1983 action against the MDOC. Regardless of the form of relief requested, the states and their departments are immune under the Eleventh Amendment from suit in the federal courts, unless the state has waived immunity or Congress has expressly abrogated Eleventh Amendment immunity by statute. *See Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 98-101 (1984); *Alabama v. Pugh*, 438 U.S. 781, 782 (1978); *O'Hara v. Wigginton*, 24 F.3d 823, 826 (6th Cir. 1993). Congress has not expressly abrogated Eleventh Amendment immunity by statute, *Quern v. Jordan*, 440 U.S. 332, 341 (1979), and the State of Michigan has not consented to civil rights suits in federal court. *Abick v. Michigan*, 803 F.2d 874, 877 (6th Cir. 1986). In numerous unpublished opinions, the Sixth Circuit has specifically held that the MDOC is absolutely immune from suit under the Eleventh Amendment. *See, e.g.*, *McCoy v. Michigan*, 369 F. App'x 646, 653-54 (6th Cir. 2010); *Turnboe v. Stegall*, No. 00-1182, 2000 WL1679478, at *2 (6th Cir. Nov. 1, 2000). In addition, the State of Michigan (acting through the Michigan Department of Corrections) is not a "person" who may be sued under § 1983 for money damages. *See Lapides v. Bd. of Regents*, 535 U.S. 613 (2002) (citing *Will v. Mich. Dep't of State*

*Police*, 491 U.S. 58 (1989)). Therefore, the MDOC is properly dismissed under the doctrine of sovereign immunity.

B. Eighth Amendment

The Eighth Amendment imposes a constitutional limitation on the power of the states to punish those convicted of crimes. Punishment may not be "barbarous" nor may it contravene society's "evolving standards of decency." *Rhodes v. Chapman*, 452 U.S. 337, 345-46 (1981). The Amendment, therefore, prohibits conduct by prison officials that involves the "unnecessary and wanton infliction of pain." *Ivey v. Wilson*, 832 F.2d 950, 954 (6th Cir. 1987) (per curiam) (quoting *Rhodes*, 452 U.S. at 346). The deprivation alleged must result in the denial of the "minimal civilized measure of life's necessities." *Rhodes*, 452 U.S. at 347; *see also Wilson v. Yaklich*, 148 F.3d 596, 600-01 (6th Cir. 1998). The Eighth Amendment is only concerned with "deprivations of essential food, medical care, or sanitation" or "other conditions intolerable for prison confinement." *Rhodes*, 452 U.S. at 348 (citation omitted). Moreover, "[n]ot every unpleasant experience a prisoner might endure while incarcerated constitutes cruel and unusual punishment within the meaning of the Eighth Amendment." *Ivey*, 832 F.2d at 954.

In order for a prisoner to prevail on an Eighth Amendment claim, he must show that he faced a sufficiently serious risk to his health or safety and that the defendant official acted with "'deliberate indifference' to [his] health or safety." *Mingus v. Butler*, 591 F.3d 474, 479-80 (6th Cir. 2010) (citing *Farmer v. Brennan*, 511 U.S. 825, 834 (1994) (applying deliberate indifference standard to medical claims); *see also Helling v. McKinney*, 509 U.S. 25, 35 (1993) (applying deliberate indifference standard to conditions of confinement claims)). "Routine discomfort is 'part of the penalty that criminal offenders pay for their offenses against society.'"

*Hudson v. McMillian*, 503 U.S. 1, 9 (1992) (quoting *Rhodes*, 452 U.S. at 347). As a consequence, "extreme deprivations are required to make out a conditions-of-confinement claim." *Id.*

Placement in segregation is considered a routine discomfort. *Hudson*, 503 U.S. at 9; *see also Jones v. Waller*, No. 98-5739, 1999 WL 313893, at *2 (6th Cir. May 4, 1999). Although it is clear that Plaintiffs may have been denied certain privileges as a result of their placement in segregation, they do not allege or show that they were denied basic human needs and requirements. The Sixth Circuit has held that without a showing that basic human needs were not met, the denial of privileges as a result of administrative segregation cannot establish an Eighth Amendment violation. *See Evans v. Vinson*, 427 F. App'x 437, 443 (6th Cir. 2011); *Harden-Bey v. Rutter*, 524 F.3d 789, 795 (6th Cir. 2008). Moreover, Plaintiffs cannot bring an Eighth Amendment claim for emotional or mental damages because they do not allege a physical injury. *See* 42 U. S.C. §1997e(e); *see also Hudson*, 503 U.S. at 5; *Harden-Bey*, 524 F.3d at 795.

Plaintiffs' allegations regarding the use of racial slurs or the humiliation of being strip-searched also fall short of the extreme deprivations required to state an Eighth Amendment claim. An allegation that a prison official used racial slurs, although unprofessional and reprehensible, does not rise to constitutional dimensions. *See Ivey*, 832 F.2d at 954-55; *Jones Bey v. Johnson*, 248 F. App'x 675, 677-78 (6th Cir. 2007) (prison guard's use of racial slurs and other derogatory language against state prisoner did not rise to level of a violation of the Eighth Amendment) (citing *Torres v. County of Oakland*, 758 F.2d 147, 152 (6th Cir.1985)); *Williams v. Gobles*, No. 99-1701, 2000 WL 571936, at *1 (6th Cir. May 1, 2000) (occasional or sporadic use of racial slurs does not rise to a level of constitutional magnitude; *Bell-Bey v. Mayer*, No. 98-1425, 1999 WL 1021859, at *1 (6th Cir. Nov. 3, 1999) (same); *Thaddeus-X v. Langley*, No. 96-1282, 1997 WL 205604, at *1 (6th Cir. Apr. 24, 1997) (verbal harassment is insufficient to state a claim);

*Brown v. Toombs*, No. 92-1756, 1993 WL 11882 (6th Cir. Jan. 21, 1993) ("Brown's allegation that a corrections officer used derogatory language and insulting racial epithets is insufficient to support his claim under the Eighth Amendment."). Similarly, strip searches, absent resulting physical injury, are neither an excessive use of force nor a serious enough deprivation to run afoul of the Eighth Amendment. *See Evans*, 427 F. App'x at 443; *Jackson v. Herrington*, 393 F. App'x 348, 354 (6th Cir. 2010).

Even if the deprivations were sufficiently serious, Plaintiffs have failed to allege the requisite state of mind. They allege only gross negligence and argue, under *Quigley v. Thai*, 707 F. 3d 675 (6th Cir. 2013), that gross negligence is the equivalent of deliberate indifference. Plaintiffs misread the holding in *Quigley*. The *Quigley* court concluded that a showing of deliberate indifference would suffice to show gross negligence so as to overcome state-law immunity. *Id.* at 686. The relationship, however, goes only one way. A showing of gross negligence will not suffice to show deliberate indifference. *See, e.g., Broyles v. Correctional Medical Services, Inc.*, 478 F. App'x 971, 975 (6th Cir. 2012) ("To satisfy the subjective component, the defendant must possess a 'sufficiently culpable state of mind,' rising above negligence or even gross negligence and being 'tantamount to intent to punish.'"). Because Plaintiffs allege only gross negligence, their allegations fall short.

    C. <u>Due process</u>

"The Fourteenth Amendment protects an individual from deprivation of life, liberty or property, without due process of law." *Bazetta v. McGinnis*, 430 F.3d 795, 801 (6th Cir. 2005). To establish a Fourteenth Amendment procedural due process violation, a plaintiff must show that one of these interests is at stake. *Wilkinson v. Austin*, 545 U.S. 209, 221 (2005). Analysis of a procedural due process claim involves two steps: "[T]he first asks whether there exists a

9

liberty or property interest which has been interfered with by the State; the second examines whether the procedures attendant upon that deprivation were constitutionally sufficient." *Ky. Dep't of Corr. v. Thompson*, 490 U.S. 454, 460 (1989). The Supreme Court long has held that the Due Process Clause does not protect every change in the conditions of confinement having an impact on a prisoner. *See Meachum v. Fano*, 427 U.S. 215, 225 (1976).

In *Sandin v. Conner*, 515 U.S. 472, 484 (1995), the Court set forth the standard for determining when a state-created right creates a federally cognizable liberty interest protected by the Due Process Clause. According to the *Sandin* Court, a prisoner is entitled to the protections of due process only when the sanction "will inevitably affect the duration of his sentence" or when a deprivation imposes an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin*, 515 U.S. at 486-87; *see also Jones v. Baker*, 155 F.3d 810, 812 (6th Cir. 1998); *Rimmer-Bey v. Brown*, 62 F.3d 789, 790-91 (6th Cir. 1995). The *Sandin* Court concluded that mere placement in administrative segregation did not implicate a liberty interest because the segregation at issue in that case did not impose an atypical and significant hardship. *Sandin*, 515 U.S. at 484; *Wilkinson v. Austin*, 545 U.S. 209, 222-23 (2005). Plaintiffs here have failed to allege that their very short stays in segregation imposed atypical and significant hardships. Accordingly, they have failed to identify a liberty interest that warrants due process protection.

Plaintiffs also claim that they have been deprived of property (store items, headphones, legal foot locker, papers) without due process. Plaintiffs' due process claims are barred by the doctrine of *Parratt v. Taylor*, 451 U.S. 527 (1981), *overruled in part by Daniels v. Williams*, 474 U.S. 327 (1986). Under *Parratt*, a person deprived of property by a "random and unauthorized act" of a state employee has no federal due process claim unless the state fails to afford an adequate post-deprivation remedy. If an adequate post-deprivation remedy exists, the

10

deprivation, although real, is not "without due process of law." *Parratt*, 451 U.S. at 537. This rule applies to both negligent and intentional deprivation of property, as long as the deprivation was not done pursuant to an established state procedure. *See Hudson v. Palmer*, 468 U.S. 517, 530-36 (1984). Because Plaintiffs' claims are premised upon allegedly unauthorized acts of a state official, they must plead and prove the inadequacy of state post-deprivation remedies. *See Copeland v. Machulis*, 57 F.3d 476, 479-80 (6th Cir. 1995); *Gibbs v. Hopkins*, 10 F.3d 373, 378 (6th Cir. 1993). Under settled Sixth Circuit authority, a prisoner's failure to sustain this burden requires dismissal of his § 1983 due-process action. *See Brooks v. Dutton*, 751 F.2d 197 (6th Cir. 1985).

Plaintiff have not sustained their burden in this case. Plaintiffs have not alleged that state post-deprivation remedies are inadequate. Moreover, numerous state post-deprivation remedies are available to them. First, a prisoner who incurs a loss through no fault of his own may petition the institution's Prisoner Benefit Fund for compensation. MDOC Policy Directive 04.07.112, ¶ B (effective Dec. 12, 2013). Aggrieved prisoners may also submit claims for property loss of less than $1,000 to the State Administrative Board. MICH. COMP. LAWS § 600.6419; MDOC Policy Directive 03.02.131 (effective Oct. 21, 2013). Alternatively, Michigan law authorizes actions in the Court of Claims asserting tort or contract claims "against the state and any of its departments, commissions, boards, institutions, arms, or agencies." MICH. COMP. LAWS § 600.6419(1)(a). The Sixth Circuit specifically has held that Michigan provides adequate post-deprivation remedies for deprivation of property. *See Copeland*, 57 F.3d at 480. Plaintiffs do not allege any reason why a state-court action would not afford them complete relief for the deprivation, either negligent or intentional, of their personal property. Accordingly, Plaintiffs' due process claims relating to the deprivation of property will be dismissed.

D. Equal protection

The Equal Protection Clause of the Fourteenth Amendment provides that a state may not "deny to any person within its jurisdiction the equal protection of the laws," which is essentially a direction that all persons similarly situated should be treated alike. U.S. CONST., amend. XIV; *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985). The threshold element of an equal protection claim is disparate treatment. *Scarbrough v. Morgan Cty. Bd. of Educ.*, 470 F.3d 250, 260 (6th Cir. 2006); *Center for Bio-Ethical Reform, Inc. v. Napolitano*, 648 F.3d 365, 379 (6th Cir. 2011) ("To state an equal protection claim, a plaintiff must adequately plead that the government treated the plaintiff 'disparately as compared to similarly situated persons and that such disparate treatment either burdens a fundamental right, targets a suspect class, or has no rational basis.'"). Plaintiffs must allege that they "ha[ve] been intentionally treated differently from others similarly situated . . . ." *Vill. of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000).

In Plaintiffs' complaint, they do nothing more than toss in the term "equal protection." "Some factual basis for such claims must be set forth in the pleadings." *Chapman v. City of Detroit*, 808 F.2d 459, 465 (6th Cir. 1986); *see also Lillard v. Shelby County Bd. of Educ.*, 76 F.3d 716, 726 (6th Cir. 1996) (an equal protection claim which is not supported by factual allegations may be dismissed as being only conclusory); *Blackburn v. Fisk Univ.*, 443 F.2d 121, 123-24 (6th Cir. 1971) (same). Plaintiffs' do not identify the prisoners who were treated differently. Plaintiffs' allegations only disclose how they were treated or how others were treated similarly to them. Without averments that Plaintiffs were treated differently from similarly situated prisoners, they fail to state a claim that their equal protection rights were violated.

E.  Retaliation (Plaintiff Price)

Retaliation based upon a prisoner's exercise of his or her constitutional rights violates the Constitution. *See Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc). In order to set forth a First Amendment retaliation claim, a plaintiff must establish that: (1) he was engaged in protected conduct; (2) an adverse action was taken against him that would deter a person of ordinary firmness from engaging in that conduct; and (3) the adverse action was motivated, at least in part, by the protected conduct. *Id.* Moreover, a plaintiff must be able to prove that the exercise of the protected right was a substantial or motivating factor in the defendant's alleged retaliatory conduct. *See Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001) (citing *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)).

The filing of a prison grievance is constitutionally protected conduct for which a prisoner cannot be subjected to retaliation. *See Smith*, 250 F.3d at 1037; *Hall v. Nusholtz*, No. 99-2442, 2000 WL 1679458, at *2 (6th Cir. Nov. 1, 2000); *Burton v. Rowley*, No. 00-1144, 2000 WL 1679463, at *2 (6th Cir. Nov. 1, 2000). Here, Plaintiff Price contends he was placed in segregation in retaliation for his letter of complaint to Defendant Mackie. Even if such a letter were protected conduct, and if Plaintiff Price's placement in segregation were sufficiently adverse action, Plaintiff Price has failed to allege that his letter to Mackie motivated Defendant Benson and Defendant Lee to place Plaintiff Price in segregation two months later.

It is well recognized that "retaliation" is easy to allege and that it can seldom be demonstrated by direct evidence. *See Harbin-Bey v. Rutter*, 420 F.3d 571, 580 (6th Cir. 2005); *Murphy v. Lane*, 833 F.2d 106, 108 (7th Cir. 1987); *Vega v. DeRobertis*, 598 F. Supp. 501, 506 (C.D. Ill. 1984), *aff'd*, 774 F.2d 1167 (7th Cir. 1985). "[A]lleging merely the ultimate fact of retaliation is insufficient." *Murphy*, 833 F.2d at 108. "[C]onclusory allegations of retaliatory

motive 'unsupported by material facts will not be sufficient to state . . . a claim under § 1983.'" *Harbin-Bey*, 420 F.3d at 580 (quoting *Gutierrez v. Lynch*, 826 F.2d 1534, 1538-39 (6th Cir. 1987)); *see also Iqbal*, 556 U.S. at 678 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."); *Skinner v. Bolden*, 89 F. App'x 579, 579-80 (6th Cir. 2004) (without more, conclusory allegations of temporal proximity are not sufficient to show a retaliatory motive). Plaintiff Price merely alleges the ultimate fact of retaliation in this action. He has not presented any facts to support his conclusion that Defendants Benson and Lee retaliated against him because he sent a letter of complaint to Defendant Mackie almost two months earlier. Accordingly, his speculative allegation fails to state a claim.

F. Access to the courts (Plaintiff Lamb)

It is clearly established that prisoners have a constitutionally protected right of access to the courts under the First and Fourteenth Amendments. *See Lewis v. Casey*, 518 U.S. 343, 354 (1996); *Bounds v. Smith*, 430 U.S. 817, 821 (1977); *Wolff v. McDonnell*, 418 U.S. 539, 556 (1974). Prison officials have a two-fold duty to protect a prisoner's right of access to the courts. *McFarland v. Luttrell*, No. 94-6231, 1995 WL 150511, at *3 (6th Cir. Apr. 5, 1995). First, they must provide affirmative assistance in the preparation of legal papers in cases involving constitutional rights, in particular criminal and habeas corpus cases, as well as other civil rights actions relating to the prisoner's incarceration. *Id.* (citing *Bounds*, 430 U.S. at 824-28). Second, the right of access to the courts prohibits prison officials from erecting any barriers that may impede the inmate's accessibility to the courts. *Id.* (citing *Knop v. Johnson*, 977 F.2d 996, 1009 (6th Cir. 1992)); *see also Bounds*, 430 U.S. at 822 (citing *Ex parte Hull*, 312 U.S. 546, 549 (1941)). In order to state a viable claim for interference with his access to the courts, a plaintiff must show actual injury to pending or contemplated litigation. *See Lewis*, 518 U.S. at 349; *Dellis v. Corr.*

14

*Corp. of Am.*, 257 F.3d 508, 511 (6th Cir. 2001); *Talley-Bey v. Knebl*, 168 F.3d 884, 886 (6th Cir. 1999); *Knop*, 977 F.2d at 1000.

In addition, the Supreme Court squarely has held that "the underlying cause of action . . . is an element that must be described in the complaint, just as much as allegations must describe the official acts frustrating the litigation." *Christopher v. Harbury*, 536 U.S. 403, 415 (2002) (citing *Lewis*, 518 U.S. at 353 & n.3). "Like any other element of an access claim, the underlying cause of action and its lost remedy must be addressed by allegations in the complaint sufficient to give fair notice to a defendant." *Id.* at 416.

Here, Plaintiff Lamb contends that Defendants Cross and Daron have interfered with his access to the courts by taking or destroying Plaintiff's legal papers. Although such conduct might constitute a barrier that impedes Plaintiff's access to the courts, Plaintiff has failed to allege that he was so impeded here. Plaintiff does not identify any criminal, habeas corpus, or prisoner civil rights proceeding that has failed because of his missing papers. The cases Plaintiff filed in the Eastern District were concluded before the events of which he complains. *See Lamb v. Wayne County Prosecutor*, No. 2:09-cv-15003 (E.D. Mich.); *Lamb v. Archer*, No. 2:15-cv-12654 (E.D. Mich.); *Lamb v. Jones*, No. 2:03-cv-73587 (E.D. Mich.); *Lamb v. Woods*, No. 2:12-cv-12825 (E.D. Mich.). The cases Plaintiff filed in this district were unaffected. *See Lamb v. Prevo*, No. 1:08-cv-648 (W.D. Mich.); *Lamb v. Wilson*, 2:14-cv-218 (W.D. Mich.). Based on the dockets of the Michigan Court of Appeals and the Michigan Supreme Courts, it also appears that Plaintiff Lamb's successive filings of motions for relief from judgment, and subsequent appeals of their denial, have continued unabated. Put simply, Plaintiff Lamb has failed to allege any injury and, thus, has failed to allege a First Amendment access to the courts claim.

G. State law claims

Plaintiffs contend that all of the individual Defendants have violated state rules, regulations, and policy directives. Plaintiffs argue further that Defendants have been negligent, grossly negligent, and have intentionally inflicted emotional distress. Claims under § 1983 can only be brought for "deprivation of rights secured by the constitution and laws of the United States." *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 924 (1982). Section 1983 does not provide redress for a violation of a state law. *Pyles v. Raisor*, 60 F.3d 1211, 1215 (6th Cir. 1995); *Sweeton v. Brown*, 27 F.3d 1162, 1166 (6th Cir. 1994). Plaintiffs' assertions that Defendants violated state law therefore fails to state a claim under § 1983.

Moreover, to the extent that Plaintiffs seek to invoke this Court's supplemental jurisdiction over a state-law claim, the Court declines to exercise jurisdiction. In determining whether to retain supplemental jurisdiction, "[a] district court should consider the interests of judicial economy and the avoidance of multiplicity of litigation and balance those interests against needlessly deciding state law issues." *Landefeld v. Marion Gen. Hosp., Inc.*, 994 F.2d 1178, 1182 (6th Cir. 1993). Ordinarily, where a district court has exercised jurisdiction over a state-law claim solely by virtue of supplemental jurisdiction and the federal claims are dismissed prior to trial, the court will dismiss the remaining state-law claims. *Id*. Dismissal, however, remains "purely discretionary." *Carlsbad Tech., Inc. v. HIF Bio, Inc.*, 556 U.S. 635, 639 (2009) (citing 28 U.S.C. § 1367(c)); *Orton v. Johnny's Lunch Franchise, LLC*, 668 F.3d 843, 850 (6th Cir. 2012). Here, the balance of the relevant considerations weighs against the continued exercise of supplemental jurisdiction. Accordingly, Plaintiffs' state-law claims will be dismissed without prejudice.

**Conclusion**

Having conducted the review required by the Prison Litigation Reform Act, the Court determines that Defendant MDOC will be dismissed on grounds of sovereign immunity and Defendants ECF Warden Thomas Mackie; ICF Lieutenant Unknown O'Brian; ECF Sergeant Unknown Baker; ECF Corrections Officers Unknown Benson, Unknown Lee, William Cross, Unknown Daron, and Unknown Gaudia will be dismissed for failure to state a claim under 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). Plaintiffs' state law claims will be dismissed without prejudice.

The Court must next decide whether an appeal of this action would be in good faith within the meaning of 28 U.S.C. § 1915(a)(3). *See McGore v. Wrigglesworth*, 114 F.3d 601, 611 (6th Cir. 1997). For the same reasons that the Court dismisses the action, the Court discerns no good-faith basis for an appeal. Should Plaintiffs appeal this decision, the Court will assess the $505.00 appellate filing fee pursuant to § 1915(b)(1), *see McGore*, 114 F.3d at 610-11, unless Plaintiffs are barred from proceeding *in forma pauperis*, e.g., by the "three-strikes" rule of § 1915(g). If they are so barred, they will be required to pay their proportionate share of the $505.00 appellate filing fee in one lump sum.

This is a dismissal as described by 28 U.S.C. § 1915(g). For Plaintiff Lamb, it is his third such dismissal. *See Lamb v. Archer et al.*, No. 2:15-cv-12654 (E.D. Mich.) (ECF No. 10); *Lamb v. Wayne Co. Prosecutor*, No. 2:09-cv-15003 (E.D. Mich.) (ECF No. 11).

A Judgment consistent with this Opinion will be entered.

Dated: February 7, 2018     /s/ Paul L. Maloney
                            Paul L. Maloney
                            United States District Judge